USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11-7-14

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

615 BUILDING COMPANY,                    :
                                         :
                              Plaintiff, :        **REPORT AND**
                                         :        **RECOMMENDATION**
                - against -              :
                                         :        **13-CV-215 (GBD) (RLE)**
ANDREW RUDNICK,                          :
                                         :
                              Defendant. :

---

**To the HONORABLE GEORGE B. DANIELS, U.S.D.J.:**

## I. INTRODUCTION

On January 9, 2013, Plaintiff 615 Building Company (the "Company") brought this action against Andrew Rudnick ("Rudnick"), for breach of contract resulting from Rudnick's failure to pay the rent and rent arrears as guarantor to Manhattan Skincare Clinic LLC d/b/a Sleek Medspa (the "Tenant"). Rudnick failed to file an Answer or otherwise appear in this matter. The Clerk of the Court entered a certificate of default judgment against Rudnick on May 23, 2013. (Doc. No. 5.) On July 8, 2013, the Honorable George B. Daniels referred the case to the undersigned for an inquest on damages, interest, attorneys' fees, and costs. (Doc. No. 9.) For reasons which follow, I recommend that judgment be entered for the Company in the amount of **$846,054.91 in damages and $24,196.17 in attorneys' fees and costs**.

## II. BACKGROUND

The Company is the landlord of the building located at 800-B Fifth Avenue (the "Building") in New York City. (Compl. ¶ 3; Pl.'s Mem. of Damages ("Pl. Mem.") 2.) On October 31, 2000, the Company entered into a written commercial agreement (the "Lease") to lease a portion of the Building to the Tenant (the "Premises"). (*Id.*; Pl. Mem. Ex. A.) Under the terms of the Lease, the Tenant agreed to rent the Lower Level of the Building for a fixed annual

rent of $432,000. (Pl. Mem. Ex. A.) The Lease provided that, if the Tenant defaulted in the

payment of the rent, the Owner, upon serving a written ten-day notice upon the Tenant could "re-

enter the demised premises" and "dispossess Tenant by summary proceedings" and "hold the

premises as if this lease had not been made . . . ." (*Id.* at 3, 8.) The Lease further stated:

> In case of any such default, re-entry, expiration and / or dispossess by summary
> proceedings or otherwise, (a) the rent shall become due thereupon and be paid up
> to the time of such re-entry, dispossess and / or expiration, (b) Owner may re-let
> the premises . . . , and / or (c) Tenant or the legal representatives of Tenant shall
> also pay Owner as liquidated damages for the failure of Tenant to observe and
> perform said Tenant's covenants herein contained, any deficiency between the rent
> hereby reserved and/or covenant to be paid and the net amount, if any, of the rents
> collected on account of the lease . . . of the demised premises for each month of the
> period which would otherwise have constituted the balance of the term of the lease.

(*Id.* at 3.) Finally, the lease stated that the Company was not liable "in any way whatsoever for

failure to re-let the demised premises." (*Id.*) The Lease was amended twice, on August 27,

2007, and in June 2010. (Pl. Mem. Exs. B, E.)

On August 27, 2007, Rudnick, the CEO of the Tenant, and the Company entered into a

Guaranty of Lease, whereby Rudnick guaranteed to the Company "the full and prompt payment

of rent," including "the fixed annual rent, additional rent and any and all other sums and charges,

payable by Tenant . . . ." (Pl. Mem. Ex. D at 1.) On June 15, 2010, Rudnick executed a

Ratification of Guaranty. (Pl. Mem. Ex. F.) The Tenant failed to pay rent as required by the

Lease, and the Company served a written Demand seeking payment totaling $104,487.90

through July 2012. (Pl. Mem. 5.)

The Company then commenced a summary commercial non-payment proceeding against

the Tenant in New York County Civil Court "seeking unpaid base rent and escalations for the

period through July 2012 totaling $104,487.90 exclusive of attorney's fees." (*Id.*; Pl. Mem. Ex.

G.) The case settled, and a Stipulation of Settlement (the "Settlement") was filed on September

2

21, 2012. (*Id.*) Under the terms of the Settlement, the Tenant admitted to owing rent and rent

arrears totaling $177,783.82 through September 30, 2012. (*See* Pl. Mem. 6; Pl. Mem. Ex. G at

2.) The Company extended the Tenant's time to pay the rent and arrears through September

2013, and the Tenant consented to convert the Summary Proceeding to a holdover petition. (Pl.

Mem. Ex. G. at 2.) The Company was awarded "a final judgment of possession" of the Premises

and a money judgment of $104,487.90 against the Tenant. (*See id*; Pl. Mem. 6.) The money

judgment was to be paid in twelve monthly installments of $8,707.33 by the fifth day of each

month. (Pl. Mem. Ex. G. at 3.) The Settlement provided:

> If any payment set forth hereinabove is not made by its due date, . . . [Tenant] will
> be deemed to be in default under this Stipulation, and [the Company] shall be
> permitted to enforce the Judgment and accelerate the execution of the warrant upon
> five (5) days facsimile Notice of Default to [Tenant's] counsel, but subject to cure
> within said time frame.

(*Id.* at 3-4.) The final paragraph of the Settlement stated: "this Court shall retain continuing

jurisdiction over this Summa[r]y Proceeding to ensure compliance with the terms thereof or to

resolve any issues that may arise out of the implementation of this Stipulation." (*Id.* at 7.) The

Chief Clerk of the Civil Court of the City of New York, County of New York, entered judgment

on September 21, 2012. (Pl. Mem. Ex. H.)

The Tenant failed to pay any part of the money judgment, and the Company recovered

the Premises on December 10, 2012. (*Id.*; Pl. Mem. Ex. I.) The Company filed suit in this Court

on January 9, 2013, and the Company served Rudnick with the Summons and Complaint on

March 4, 2013. Proof of service thereof was filed on March 15, 2013. (Pl. Supp. Mem. of

Damages ("Pl. Supp. Mem.") ¶ 4; *see also* Proof of Service of Summons and Complaint, Doc.

No. 3.) After Judge Daniels issued a Default Judgment and referred the case to the undersigned

for an Inquest, the Company was ordered to submit a memorandum regarding damages and

3

attorneys' fees, which it did on September 25, 2013.  (Pl. Mem. Exs. A-M.)  On April 10, the

Court held a second Inquest Conference to give the company an opportunity to clarify its

damages request.  (Pl. Supp. Mem. ¶ 14.)  The Company submitted a Supplemental

Memorandum of Damages on June 20, 2014.  (*Id.* at ¶ 15.)  In response to queries from the

Court, the Company submitted two supplemental letters with additional information on

September 18, 2014, and October 8, 2014.  (Doc. Nos. 19 and 20.)

      The Company seeks a total of $2,014,744.95, which includes: (1) $610,687.46 in rent

and rent arrears for the period from October 2012 through September 2013 (after applying and

crediting the Tenant's $174,705.20 security deposit in December 2012); (2) liquidated damages

in an amount equal to the rent and additional rent that would have become due, owing and

payable for the balance of the Lease term ending on October 31, 2015, totaling $1,248,279.25;

(3) interest amounting to $127,373.92 on any unpaid amount beginning from December 31,

2012, at nine percent per annum; and (4) legal costs and disbursements (attorneys' fees)

amounting to $28,404.32.  (*Id.* at 7-9.)

### III. DISCUSSION

**A.**    **Jurisdiction and Venue**

      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332,

because the Parties are citizens of different states and the amount of damages sought exceeds

$75,000.  The Company is a domestic limited liability company organized under New York

laws, and Rudnick maintains a place of business in Florida.  (Compl. ¶ 3.)  Venue is proper in

this Court pursuant to 28 U.S.C. § 1391(a)(2).

4

## B.     Default Judgment and Inquest Standard

A party may move for a default judgment against an adversary who fails to answer or

appear. Fed. R. Civ. P. 55(b). Following a default judgment, all well-pled factual allegations of

the complaint, except those relating to damages, are accepted as true. *Cotton v. Slone*, 4 F.3d

176, 181 (2d Cir. 1993). A factual allegation will be deemed not well-pled only in "very narrow,

exceptional circumstances." *Trans World Airlines, Inc. v. Hughes*, 308 F. Supp. 679, 683

(S.D.N.Y. 1969), *modified*, 449 F.2d 51 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363

(1973).

A court must conduct an inquest in order to determine the amount of damages with

reasonable certainty, and it may make such determination without a hearing, "as long as it [has]

ensured that there is a basis for the damages specified in the default judgment." *TMS Entm't Ltd.*

*v. Madison Green Entm't Sales, Inc.,* 03 Civ. 517 (GBD) (RLE), 2005 WL 2063786, at *2

(S.D.N.Y. Aug. 16, 2005) (citing *Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*,

109 F.3d 105, 111 (2d Cir. 1997)). Accordingly, the Court may rely on plaintiff's affidavits and

documentary evidence in determining the reasonableness of the damages requested. *See TMS*

*Entm't Ltd.*, 2005 WL 2063786, at *2 (citing *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d

Cir. 1993)). Here, the Company submitted a Memorandum of Damages and a Supplemental

Memorandum of Damages, along with accompanying documentary evidence.

## C.     Computation of Damages

### 1.     Breach of Contract Damages

Damages for breach of contract are determined by calculating the "amount necessary to

put the plaintiff in the same economic position he would have been in had the defendant fulfilled

his contract." *Indu Craft, Inc. v. Bank of Baroda,* 47 F.3d 490, 495 (2d Cir. 1995) (citing *Adams*

5

*v. Lindblad Travel, Inc.*, 730 F.2d 89, 92 (2d Cir. 1984)).  Where the breach of contract was a

failure to pay money, the plaintiff is entitled to recover the unpaid amount due under the contract

plus interest. *See Scavenger, Inc. v. GT Interactive Software Corp.*, 289 A.D.2d 58, 58-59 (1st

Dep't 2001).  Generally, when a tenant abandons the premises prior to the expiration of a lease,

the landlord may exercise one of three options: (1) do nothing and collect the full rent due under

the lease; (2) accept the tenant's surrender, reenter the premises and relet them, thereby releasing

the tenant from further liability for rent; or (3) notify the tenant that it is entering and reletting the

premises for the tenant's benefit. *See Holy Prop. Ltd. v. Kenneth Cole Prod.*, 87 N.Y.2d 130,

133-34 (1995) (citations omitted).  When a tenant is removed from the premises, the landlord-

tenant contract terminates. *Int'l Pubs. v. Matchabelli*, 260 N.Y. 451, 454 (1933).  However,

parties may contract as they please, and "if the lease provides that the tenant shall be liable for

rent after eviction, the provision is enforceable." *Holy Prop.*, 87 N.Y.2d at 34 (citations

omitted).

Here, Rudnick guaranteed to the Company "the full and prompt payment of rent,"

including "the fixed annual rent, additional rent and any and all other sums and charges, payable

by Tenant . . . ." (Pl. Mem. Ex. D at 1.)  Rudnick did not pay.  The lease provides that, if the

Tenant defaults in the payment of the rent, the Owner, upon serving a written ten-day notice

upon the Tenant, may "re-enter the demised premises" and "dispossess Tenant by summary

proceedings" and "hold the premises as if this lease had not been made . . . ." (Pl. Mem. Ex. A at

3, 8.)  After a summary proceeding was commenced in state court, the Parties entered into a

settlement agreement.  The Tenant failed to pay any part of the money judgment.

### a.  Lease Arears

The Company asserts that arears from July 1, 2011, through September 30, 2013, total

$610,687.46.  (Pl. Mem. Ex. K.)  This amount consists of:

| | |
|---|---:|
| Rent[1] | $1,262,482.20 |
| Consumer Price Index ("CPI")[2] | $66,002.03 |
| Legal[3] | $8,030.20 |
| Rubbish[4] | $3,816.79 |
| Credits[5] | (-$174,705.20) |
| Payments[6] | + (-$602,305.02) |
| Total | $610,687.46 |

(Pl. Mem. Ex. K.)  Because the Tenant failed to pay rent and arears through September 30, 2013,

I recommend that the Company recover **$610,687.46** for arears from July 1, 2011, through

September 30, 2013.

### b.  Liquidated Damages

Additionally, the Company asserts that Rudnick is liable for liquidated damages in an

amount equal to "the rent and additional rent that would have become due, owing and payable

under the Lease for the balance of the Lease term ending on October 31, 2015 totaling

$1,248,279.25."  (Pl. Mem. Ex. K; *see also* Pl. Supp. Mem. ¶ 86.)  According to the Company,

---

[1]  Fixed annual rental rate is $46,758 per month. (Pl. Mem. Ex. K.)

[2]  Pursuant to the Original Lease Section 37, "each October after the execution . . . there shall be made a cost of living adjustment of the fixed annual rental rate." (Pl. Mem. Ex. A.)  The adjustment is based on the Consumer Price Index published by the Bureau of Labor Statistics of the U.S. Department of Labor. (*Id.*)  The CPI charges started at $607.86 per month and increased to $3,172.57 per month from July 1, 2011 through September 30, 2013. (Pl. Mem. Ex. K.)

[3]  The legal fees included here are the costs incurred to litigate against the Tenant and are not included in the subsequent analysis for legal fees to litigate against Rudnick. (*See* Doc. No. 19.)

[4]  Rubbish refers to the cost to remove trash and/or abandoned items on the premises. (*See* Doc. No. 19.)

[5]  Credits include the Tenant's security deposit. (Pl. Supp. Mem. ¶ 85.)

[6]  The last payment made by the Tenant was in July 2012. (Pl. Mem. Ex. K.)  The Tenant made ten payments of varying amounts from July 1, 2011, through July 30, 2012. (*Id.*)

liquidated damages consists of twenty-five months (from October 1, 2013, through October 31, 2015) of rent at $46,758.60 per month and an increase in CPI of $3,172.57 per month; thus, equaling $1,248,279.25. (Pl. Mem. Ex. K.)

On January 20, 2014, however, the Company re-let the premises to a new tenant at a higher rate. (Doc. No. 20.) As noted above, when the tenant abandoned the lease prior to the expiration of the lease, the Company had three options. Here, the Company chose the second option and re-let the property; thus, releasing the tenant from having to make further payments.

In a letter to the Court, the Company points out that it incurred costs in order to re-let the premises to the new tenant and that the new tenant's lease is set to expire before October 31, 2015. (Doc. No. 50.) These facts are not relevant to a determination of contract damages in this case. The Company made a business decision in re-letting the premises. It could have gone with the first option and collected the full rent due under the lease. By re-letting the premises, however, the Company released the tenant from further liability for rent. Any risk of loss incurred from the Company's decision to re-let, is theirs to bear just as any amounts over the lease value was theirs to retain.

Defendant, therefore, is only liable for liquidated damages from October 1, 2013, through January 20, 2014. At a rental rate of $46,758.60 per month and an increase in CPI of $3,172.57 per month, the Company is entitled to **$182,007.16** in liquidated damages from October 1, 2013, through January 20, 2014.[7]  I recommend this amount be included in the total damages.

---

[7] This calculation is based on three full months (October 1, 2013, through December 31, 2013), plus a prorated rate from January 1, 2014, through January 20, 2014.

8

### c.  Total Contract Damages

In the Complaint, the Company requests that they recover from Defendant, *inter alia*: (1) $104,487.90 for default of the Stipulation Settlement between the parties from the September 21, 2012 civil proceedings; (2) $334,096.92 for rent and additional rent arrears that have become due and owing under the lease through December 31, 2012, less any amounts recovered from the default; and (3) $1,697,659.78 for liquidated damages, plus an amount equal to the increase in CPI escalations. (Doc. No. 1.) Thus, Defendant was put on notice by the Complaint as to the possible amount owned. In addition, he has not contested the amount owed. Therefore, the Company is entitled to recover $610,687.46 for arears from July 1, 2011, through September 30, 2013. In addition, the Company is entitled to $182,007.16 in liquidated damages from October 1, 2013, through January 20, 2014. In total, the Company is entitled to **$792,694.62** in contract damages. I recommend that the Company receive this amount in total contract damages.

### 2.  Prejudgment Interest

The Company also asks the Court to award prejudgment interest from December 31, 2012, through September 2013, on the principal amount at a rate of nine percent annually. (*See* Pl. Mem. 9.) Under New York State law, "a plaintiff who prevails on a claim for breach of contract is entitled to prejudgment interest as a matter of right." *U.S. Naval Inst. v. Charter Commc'n, Inc.,* 936 F.2d 692, 698 (2d Cir. 1991); *see also* N.Y. C.P.L.R. §§ 5001, 5002. Interest is calculated at the New York State statutory rate of nine percent per annum, N.Y. C.P.L.R. § 5004, unless the agreement contract provides a different rate. *Nuera Commc'n v. Telron Commc'n USA, Inc.,* 00-CV-9167 (RMB) (FM), 2002 WL 31778796, at *3 (S.D.N.Y. Nov. 15, 2002).

9

The Company's request for interest at an annual rate of nine percent is within the scope

of New York law, and should be granted.  I recommend that the Company recover **$53,360.29** in

prejudgment interest from December 2012 through September 2013.[8]

## C.    Attorneys' Fees and Costs

The Company seeks an award of attorneys' fees in the amount of $28,054.32, and $350 in

costs, for a total of $28,404.32.  The terms and conditions of the Guaranty of Lease between

Rudnick and the Company provide that Rudnick will pay "all reasonable attorneys [sic] fees

incurred by [the Company] or caused by any such default and/or by the enforcement of this

Guaranty."  (Pl. Mem. Ex. D at 1.)  Further, pursuant to 29 U.S.C. § 1132(g)(2)(D), plaintiffs are

entitled to an award of reasonable attorneys' fees and costs that are calculated using the

"lodestar" method, that is, the hours reasonably expended multiplied by a reasonable hourly rate.

*See LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763-64 (2d Cir. 1998) (quoting *Hensley v.

Eckerhart,* 461 U.S. 424, 433 (1983)).  The lodestar figure is based upon current, prevailing

market rates.  *See LeBlanc-Sternberg*, 143 F.3d at 764 (quoting *Blum v. Stenson,* 465 U.S. 886,

895 (1984)).

Although there is a "strong presumption" that the lodestar is reasonable, the calculated

amount may be adjusted, depending on considerations such as the novelty and difficulty of the

issues. *See Toys "R" Us, Inc. v. Abir*, 97 -CV- 8675 (JGK), 1999 WL 61817, at *1-2 (S.D.N.Y.

Feb. 10, 1999).  In determining a reasonable hourly rate, the Court should consider the rates for

legal services "prevailing in the community for similar services by lawyers of reasonably

---

[8] Interest on the principal amount accrues at a rate of $195.46 per diem based on a 365 day year, as governed by New York law. *See Nuera Commc'n USA,* 2002 WL 31778796, at *3.  The total sum of $53,360.29 is calculated by multiplying the $195.46 per diem interest rate by 273 days, the number of days between December 31, 2012, and September 30, 2013.

comparable skill, experience, and reputation." *Gierlinger v. Gleason,* 160 F.3d 858, 882 (2d Cir.

1998) (quoting *Blum,* 465 U.S. at 895 n.11). In addition, the court may also rely on its own

knowledge of hourly rates charged in private firms to determine what is reasonable in the

relevant community. *Miele v. N.Y. Teamsters Conf. Pens. & Ret. Fund,* 831 F.2d 407, 409 (2d

Cir. 1987). For purposes of determining the fee, the relevant community is the judicial district in

which the trial court sits. *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir.

1987).

In the Second Circuit, a party seeking an award of attorneys' fees must support its

application by submitting time records that detail "for each attorney, the date, hours expended,

and the nature of the work done." *N.Y. State Assoc. for Retarded Children, Inc. v. Carey,* 711

F.2d 1136, 1154 (2d Cir. 1983). When determining the reasonableness of the hours expended by

counsel, the court considers "the value of the work product of the specific expenditures to the

client's case." *Luciano v. Olsten Corp.,* 109 F.3d 111, 116 (2d Cir. 1997) (citations omitted).

Morever, the Court should reduce the lodestar calculation by any amount of time it deems

unreasonable. *See Quarantino v. Tiffany & Co.,* 166 F.3d 422, 425 (2d Cir. 1998) (citing

*Hensley v. Eckerhart,* 461 U.S. 424, 434 (1983)).

In support of its application for fees and expenses, the Company has provided

information regarding the experience and qualifications of the two primary attorneys who

worked on the case, Joseph I. Farca ("Farca") and Myron I. Altschuler ("Altschuler"), both of the

law firm Borah, Goldstein, Altschuler, Nahins & Goidel, P.C. (the "Firm"). (*See* Pl. Mem. 8-9.)

Farca has also provided invoices that describe the hourly rate for each attorney; professional

services rendered; and costs, expenses, and disbursements. (Pl. Mem. Ex. L.) The Company is

seeking approximately 57.8 hours for Farca, a partner at the Firm, at $316 to $432 per hour; 5.5

11

hours for Myron I. Altschuler ("Altschuler"), a senior partner at the Firm, at $432 to $475 per hour; and .3 hours for Craig M. Notte, a partner at the Firm, who billed at an hourly rate of $335 per hour.  (*Id.*)

Farca and Altschuler have extensive experience in commercial litigation: Farca has more than seventeen years of experience, and Altschuler has more than forty-five years of experience. (*Id.* at 8.)  The fee application primarily covers review and analysis of documents, drafting the Complaint, the motion for default judgment and supporting declarations, and the memorandum on damages, attending conferences, and maintaining correspondence with the client.  (Pl. Mem. Ex. L.)  The attorneys' rates are in the mid-range of those approved by this Court.  The Court finds their hourly billing rates reasonable.  *See, e.g., Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 434 (S.D.N.Y. 2007) (finding reasonable that one partner and an "of counsel" bill at $550 per hour and three associates of varying seniority and experience bill at $290, $350, and $425 per hour).

In determining whether the hours claimed by counsel were "reasonably expended," the court must evaluate "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Hensley*, 461 U.S. at 433.  It is within this Court's discretion to determine whether the work of an additional attorney is reasonable when a firm bills for the work of multiple attorneys on the same project. *Luciano*, 109 F.3d at 111 (approving district court's reduction of compensable hours for second trial counsel where district court found that second counsel had questioned one minor witness and otherwise had not participated meaningfully at trial).

The Company is seeking an award of fees for approximately sixty-four hours of work completed primarily by two attorneys. As the litigation was relatively brief, the request for these

12

hours and number of attorneys billing hours seems unreasonable given that the matter was uncontested and was not procedurally difficult. The action involved drafting a Complaint, an application for a certificate of default, a six-page affidavit in support of issuance of default judgment, a nine-page memorandum on damages, an additional twenty three-page memorandum on damages, attending two Inquest Conferences, a two-page response letter, and a four-page response letter.

The Court finds the hourly rates and time expended unreasonable, and recommends discounting the attorneys' fees by 15%. Applying the lodestar method and taking into account warranted reductions, the Court recommends that the Company be awarded **$23,846.17** in attorneys' fees.

The Company has also submitted evidence of filing and service fees totaling **$350** (Pl. Mem., Ex. L.) These costs are reasonable, and the Court recommends they be included in the Company's recovery.

## IV. CONCLUSION

For the foregoing reasons, I recommend that the Company recover **$846,054.91 in damages and $24,196.17 in attorneys' fees and costs**.

Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have ten (10) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable George B. Daniels, 500 Pearl Street, Room 1310, and to the chambers of the undersigned, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn*, 474 U.S.

13

140, 150 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(d).

**DATED:**      **November 7, 2014**
               **New York, New York**

Respectfully Submitted,

The Honorable Ronald L. Ellis
United States Magistrate Judge

14